UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RSUI INDEMNITY COMPANY, a New
Hampshire Stock Company,

               Plaintiff,

vs.                         Case No.  2:09-cv-88-FtM-29DNF

BENDERSON DEVELOPMENT COMPANY, a New
York Corporation,

               Defendant.

_____

### OPINION AND ORDER

This matter comes before the Court on Defendant Benderson Development Company Inc.'s Motion for Summary Judgment (Doc. #29) filed on May 24, 2010.  Also before the Court is Plaintiff RSUI Indemnity Company's Motion for Summary Judgment and Memorandum of Legal Authority in Support (Doc. #37) filed on July 30, 2010.  Both parties have filed Responses, affidavits, and other exhibits in support of their respective briefs.  Additionally, before the Court is the Motion of Plaintiff RSUI Indemnity Company to Strike Affidavit of Guy E. Burnette, Jr., Esquire and Memorandum of Legal Authority in Support (Doc. #30) filed on June 3, 2010, and the Motion of Plaintiff RSUI Indemnity Company to Strike Affidavits (Doc. #59) filed on September 27, 2010.  Defendant Benderson filed Responses to both motions.  (Docs. ## 32, 61.)

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party.  Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).  However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment."  St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment."  Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

## II.

The Court finds the following undisputed summary judgment facts:  Defendant Benderson Development Company, Inc., n/k/a/ Benderson Properties, Inc. (Benderson Development or Defendant) purchased three levels of commercial insurance for four of its properties.  These properties were located at 2400 Rampart Blvd., Port Charlotte, Florida (Victoria Estates); 1932-2000 Kings Highway, Port Charlotte, Florida (Kings Crossing); 615 Cross

Street, Punta Gorda, Florida (Cross Trails); and 12402-12640 U.S. 17, Orlando, Florida (Berkshire Retail Shops). The primary layer of coverage was provided by Commonwealth Insurance Company of America (Commonwealth Insurance) pursuant to insurance policy number US 4380 (the Commonwealth Insurance Policy). The Commonwealth Insurance Policy was effective from March 31, 2003 to March 31, 2005, had a $5 million limit of liability, and had a $3 million annual aggregate limit for loss caused by wind peril (named storms only). (Doc. #29, p. 2.) The first excess layer of coverage was provided by Hartford Fire Insurance Company (Hartford Insurance) pursuant to insurance policy number GX 0001998 (the Hartford Insurance Policy). The Hartford Insurance Policy was effective from March 31, 2004 to March 31, 2005, and had a $10 million limit of liability per occurrence for wind losses in excess of Commonwealth's $3 million limit. (Id.) The second layer of excess coverage was provided by RSUI Indemnity Company (RSUI Indemnity) pursuant to policy number NHD334637 (the RSUI Insurance Policy). The RSUI Insurance Policy was effective from March 31, 2004 to March 31, 2005, and had a $35 million limit of liability per occurrence in excess of the $13 million provided by the first two layers of commercial insurance. (Id. at 2-3.)

On or about August 13, 2004, as a result of Hurricane Charley, Benderson Development sustained property damage at Victoria Estates, Kings Crossing, Cross Trails, and Berkshire Retail Shops.

Commonwealth Insurance and Hartford Insurance have both tendered the limits of their policies ($13 million).  Benderson Development filed a claim with RSUI Indemnity, which has refused to pay any amount.

On or about February 17, 2009, RSUI Indemnity filed a four-count Complaint (Doc. #1) seeking a declaratory judgment that there is no coverage under the RSUI Insurance Policy for the damages sought by Benderson Development.   Benderson Development filed an Answer and a Counterclaim (Doc. #13)[1] on April 8, 2009.[2]  The two-count Counterclaim alleges a breach of contract claim (Count I) and seeks declaratory relief stating that the RSUI Insurance Policy provides coverage for the full amount of plaintiff's claims (Count II).  (Id.)

The parties have now filed cross motions for summary judgment, raising the following issues:

-Whether the RSUI Insurance Policy is a scheduled policy or a blanket policy, i.e., whether liability is limited to the values shown on a Statement of Values;

---

[1]Nine entities are named as counter-plaintiffs, which the Court will collectively refer to as Benderson Development.

[2]In an abundance of caution, Benderson also filed a Complaint that was identical to the Counterclaim filed in this case.  Case No. 2:09-cv-536-FtM-29DNF, was consolidated with this case, Case No. 2:09-cv-88-FtM-29DNF, by a November 4, 2009 Opinion and Order. (Doc. #19.)

-Whether the RSUI Insurance Policy is triggered, or whether damages are less than the triggering amount regardless of the underlying carriers' payments;

-Whether the RSUI Insurance Policy provides coverage for damages caused by business interruption loss (other than lost rent or rental value);

-Whether the RSUI Insurance Policy provides coverage for increased costs incurred as a result of building laws and ordinances to repair/rebuild the properties;

-Whether the RSUI Insurance Policy provides coverage for the Berkshire Retail Shops; and

-Whether Benderson Development's claim is barred by its failure to comply with the policy's notice requirement.

**III.**

Under Florida law,[3] the interpretation of insurance contract provisions, including resolving ambiguities in the contract, is a matter of law to be decided by the court.  Adelberg v. Berkshire Life Ins. Co., 97 F.3d 470, 472 (11th Cir. 1996); St. Paul Fire & Marine Ins. Co. v. Sea Quest Int'l, Inc., 676 F. Supp. 2d 1306, 1313 (M.D. Fla. 2009).  When interpreting an insurance contract under Florida law, the language in the policy is the most important

_____

[3]Since this is a diversity action initiated in Florida, the Court must apply the substantive law of the forum state.  James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 n.1 (11th Cir. 2008).  Neither party disputes that Florida substantive law applies.

factor.  James River Ins. Co., 540 F.3d at 1274(citing Taurus
Holdings, Inc. v. United States Fid. & Guar. Co., 913 So. 2d 528,
537 (Fla. 2005).  "[C]ourts should read each [insurance] policy as
a whole, endeavoring to give every provision its full meaning and
operative effect."  Swire Pac. Holdings, Inc. v. Zurich Ins. Co.,
845 So. 2d 161, 166 (Fla. 2003)(quoting Auto-Owners Ins. Co. v.
Anderson, 756 So. 2d 29, 34 (Fla. 2000)).

     Policies should be construed according to their plain meaning
unless there is an ambiguity in the policy, in which case the
policy language will be construed against the insurer in favor of
coverage.  James River Ins. Co., 540 F.3d at 1274 (citing Deni
Assocs. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1140
(Fla. 1998)).  The policy must actually be ambiguous for such a
construction.  Id.  A policy provision is ambiguous if the language
"is susceptible to more than one reasonable interpretation, one
providing coverage and the other limiting coverage, . . ."  Taurus
Holdings, Inc., 913 So. 2d at 532 (quoting Swire Pac. Holdings, 845
So. 2d at 165).  "The lack of a definition of an operative term in
a policy does not necessarily render the term ambiguous and in need
of interpretation by the courts."  Swire Pac. Holdings, 845 So. 2d
at 166.  See generally Hale v. State Farm Florida Ins. Co., No.
4D09-1901, 2010 WL 5173889 at *1 (Fla. 4th DCA Dec. 22, 2010);
Harrington v. Citizens Property Ins. Corp., No. 4D09-2591, 2010 WL
5093204 at * 2 (Fla. 4th DCA Dec. 15, 2010).

**IV.**

## A.  Motions to Strike

Attached to Benderson Development's motion for summary judgment and its Response to RSUI Indemnity's motion for summary judgment are the Affidavits of Guy E. Burnette, Jr., Esquire, Craig F. Stanovich, CPCU, CIC, AU, and Ronald Papa.  (Docs. ## 29-6; 54-2; 54-7.)   In these affidavits, Burnette, Stonovich, and Papa express their opinions on whether the RSUI Insurance Policy covers Benderson Development's losses.  (<u>Id.</u>)  Perhaps not surprisingly, all agree with Benderson Development's position.

In its motions to strike, RSUI Indemnity argues that the affidavits are nothing more than legal opinions regarding issues for the Court's determination.  Benderson Development responds that the affidavits are "expert opinion[s] to explain the technical insurance terms . . . provide context regarding the customs in the insurance industry, and also clarify potential ambiguities . . ." (Doc. #32, p. 3.)  After reviewing the RSUI Insurance Policy, the Court finds its language is unambiguous and should be construed according to its plain meaning.  Since the Court has determined that the contract is unambiguous, it may not rely on any extrinsic evidence, including expert testimony.  <u>See</u> <u>Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co.</u>, 254 F.3d 987, 1003 (11th Cir. 2001); <u>U.S. Fire Ins. Co. v. Meridian of Palm Beach Condo. Ass'n, Inc.</u>, 700 So. 2d 161, 162 (Fla. 4th DCA 1997) (citing <u>Acceleration</u>

<u>Nat'l Serv. Corp. v. Brickell Fin. Servs. Motor Club, Inc.</u>, 541 So. 2d 738 (Fla. 3d DCA 1989)).   Thus, the Court will grant RSUI Indemnity's motions to strike.

**B.   The RSUI Insurance Policy**

The RSUI Insurance Policy, attached to the Complaint, is "form-following" to the Commonwealth Insurance Policy, "subject to the same exclusions, warranties, terms, definitions and conditions (except as respect premium, limit of liability and except otherwise provided herein) as are contained in or as may be added or endorsed to the [Commonwealth Insurance Policy]."   (Doc. #1-5, p. 16.) Additionally, the RSUI Insurance Policy limits its liability pursuant to a Scheduled Limit of Liability, which states:

It is understood and agreed that the following special terms and conditions apply to this policy:

1. In the event of loss hereunder, liability of the Company shall be limited to the least of the following in any one "occurrence":
    a.   The actual adjusted amount of the loss, less applicable deductibles;
    b.   100% of the individually stated value for each scheduled item of property insured at the location which had the loss as shown on the latest Statement of Values on file with this Company, less applicable deductibles. If no value is shown for a scheduled item then there is no coverage for that item; or
    c.   The Limit of Liability as shown on the Declarations page of this policy or as endorsed to this policy.

2. Coverage under this policy is provided only at the locations listed on the latest Statement of Values on file with this Company or attached to this policy.

>       3.  The  premium  for  this  policy  is  based  upon  the
>       Statement of Values on file with this Company or attached
>       to this policy.

(Doc. #51-1, p. 19.)  Also attached to the Complaint is a purported

Statement of Values, which includes:  Victoria Estates with a Total

Limit of Liability of $2,062,500.00; Kings Crossing with a Total

Limit of Liability of $4,625,720.00; and Cross Trails with a Total

Limit of Liability of $4,000,220.00.  (Doc. #1-6.)  The Berkshire

Retail Shops, which was under construction at the time of the loss,

does  not  appear  on  the  purported  Statement  of  Values,  nor  is  it

referenced in an attachment to the RSUI Insurance Policy.

## C. Scheduled or Blanket policy

     The  parties  dispute  whether  the  RSUI  Insurance  Policy  is  a

scheduled  policy  or  a  blanket  policy.   A  scheduled  policy  is  a

policy  in  which  "each  separately  treated  item  of  property  is  in

effect  covered  by  a  separate  contract  of  insurance  and  the  amount

recoverable  with  respect  to  a  loss  affecting  such  property  is

determined independently of the other items of property."  12 Couch

on Ins. § 175.90.  A blanket policy is a policy which "attaches to,

and covers to its full amount, every item of property described in

it."  Id. at § 177.72.

     The Court finds that the plain language of the RSUI Insurance

Policy,  which  includes  a  Limit  of  Liability  clause,  provides  a

scheduled list of the properties and limits coverage to the values

provided  on  the  latest  Statement  of  Values  on  file  with  RSUI

Indemnity.  The RSUI Insurance Policy clearly states that it covers "each scheduled item of property" which has an "individually stated value."  The Court finds that this specific language establishes a scheduled policy, rather than a blanket policy.  <u>See, e.g.,</u> <u>Gulfport-Brittany, LLC v. RSUI Indem. Co.</u>, No. 1:07cv1036HSO, 2008 WL 4951468 at *3 (S.D. Miss. Nov. 7, 2008)(citing cases that examined nearly identical limit of liability provisions and finding that they were scheduled policies rather than blanket policies).

Additionally, here as in <u>Gulfport-Brittany</u>, defendant cites no authority which interprets similar provisions as blanket policies. Benderson Development merely argues that the policy is ambiguous. It asserts that the limit of liability clause only limits the coverage of "property" loss not "time element" loss, and since loss of business income is not "property", but rather a "time element", Benderson Development argues that the limit of liability clause does not address loss of business income.  (Doc. #54, pp. 7-8.) Though the term "property" is not defined in the policy to include "time element" losses, that does not create an ambiguity in the policy.  <u>See</u> <u>Swire Pac. Holdings</u>, 845 So. 2d at 166.  The RSUI Insurance Policy clearly limits its liability to stated values in the Statement of Values.  Thus, if there were coverage for "time elements" they should be set forth in the Statement of Values.  The RSUI Insurance Policy states that "If no value is shown for a

scheduled item then there is no coverage for that item." (Doc. #1-5, p. 20.)

## D. Other Disputed Coverage[4]

As a scheduled policy, whether the RSUI Insurance Policy provides coverage for business interruption and extra expense loss as well as law and ordinance loss must be determined by the Statement of Values. RSUI Indemnity proffers the affidavit of David Michael Norris (the Norris Affidavit), the Senior Vice President of Property Underwriting, to authenticate the Statement of Values. (Doc. #38-1.) The Norris Affidavit states that the Statement of Values, which is kept on file with RSUI Indemnity, was prepared based on information provided by Benderson Development (id. at ¶18), only lists the Victoria Estates, Kings Crossing, and Cross Trail locations, and lists zero as the amount for business interruption loss. Further, the Norris Affidavit alleges that no premiums were charged or paid for business interruption coverage. (Id. at ¶¶ 13-20.) However, Norris does not specifically attest that the spreadsheet filed with the Court (see doc. #39-1) is in fact the latest Statement of Values on file with RSUI Indemnity.

In its Response, Benderson Development disputes that the document filed with the Court is an accurate Statement of Values.

---

[4]Benderson Development has stated that it is no longer seeking to recover for changes in market conditions as part of its claim. (Doc. #54, p. 12.) Therefore, the Court will not address whether the RSUI Insurance Policy provides coverage for changes in market conditions.

(Doc. #54, p. 5.)  It argues this document should not be relied on to determine whether the RSUI Insurance Policy provides coverage for Benderson Development's losses.  (Id. at pp. 5-7, 9-10.) Benderson Development proffers the affidavit of Charles W. Smith (Smith), the Risk Manager for Benderson Development, which states that the alleged Statement of Values does not list all of the properties owned by Benderson Development and insured by RSUI Indemnity.  (Doc. #54-6, p. 2.)  Further, Smith attests that the information included in the Building and Contents columns of the Statement of Values does not match the materials Benderson Development submitted to RSUI Indemnity.  (Id.)  The Court notes that some, but not other, locations that appear on the endorsements to the RSUI Insurance Policy also appear in the purported Statement of Values.  (Compare Doc. #1-5, with Doc. #29-4.)  Additionally, the Court notes that the purported Statement of Values is unlabeled and undated.

The Court may only consider evidence that "is admissible or that could be presented in an admissible form."  Denney v. City of Albany, 247 F.3d 1172, 1190 n.10 (11th Cir. 2001).  In order for evidence to be admissible the Court must find that the evidence is properly authenticated.  Fed. R. Evid. 901(a).  A document may be authenticated by an affidavit, however in this case, the Norris Affidavit does not properly authenticate that the spreadsheet filed is in fact the Statement of Values at issue, and is contradicted by

other evidence.   There is at least a reasonable inference which questions its authenticity,[5] and the Court declines to rely on the values listed to determine amount of disputed coverage.  See, e.g., Lightfoot v. Hartford Fire Ins. Co., No. 07-4833, 2010 WL 3168128 at *3-5 (E.D. La. Aug. 9, 2010)(denying summary judgment for RSUI where the purported Statement of Values was alleged to be similarly inconsistent and improperly authenticated).   Therefore, the Court will deny summary judgment to both parties as to these issues.

**E.   Coverage for the Berkshire Retail Shops**

Although there is some dispute as to the accuracy of the Statement of Values, it is undisputed that the Berkshire Retail Shops was not a reported addition to the RSUI Insurance Policy. Benderson Development argues that even though the Berkshire Retail Shops do not appear on the Statement of Values or was added by endorsement to the RSUI Insurance Policy, it should still be covered under the Errors & Omissions Clause.  (Doc. #54, p. 16.) Endorsement No. 16 to the Commonwealth Policy, effective March 31, 2004, states that:

> No inadvertent error, omission or failure in making reports or other data hereunder shall prejudice the Insured's right of recovery, but shall be corrected when discovered.  It is further understood and agreed that any error in description of locations, or values of projects

---

[5]In its Reply, RSUI does not respond to Benderson Development's challenges of the purported Statement of Values, but merely states that the assertion that the document in question is not the Statement of Values does not establish a genuine issue of material fact.  The Court disagrees.

> insured or to be insured by this policy shall not
> invalidate or reduce the policy limit of liability, or
> otherwise prejudice any recover under this policy.

(Doc. #52-1, p. 59.)

RSUI Indemnity responds that the Errors & Omissions clause would not allow recovery for the Berkshire Retail Shops. While the RSUI Insurance Policy "follows form" of the Commonwealth Policy, it does not appear that the Errors & Omissions clause would be incorporated into the RSUI Insurance Policy. The RSUI Insurance Policy specifically states that it does not incorporate exclusions, warranties, terms, definitions and conditions [as to]. . . limit of liability. (Doc. #51-1, p. 15.) The Errors & Omissions clause adds a condition to the limit of liability by stating that in certain cases the limit of liability shall not be invalidated or reduced when it otherwise may be. Thus, the Errors & Omissions clause is exempted and not incorporated into the RSUI Insurance Policy.

Even if the Errors & Omissions clause was included in the RSUI Insurance Policy, it provides coverage for errors in descriptions of locations or values of projects insured or to be insured, not omissions of entire properties. Berkshire Retail Shops is an additional location; its omission from the RSUI Insurance Policy was not an error in description or value. Thus, reading the plain language of the Errors & Omissions clause, the Court finds that it

does not provide a basis for coverage for the Berkshire Retail
Shops.

However, RSUI Indemnity concedes that it advised Benderson
Development that it would consider the Berkshire Retail Shops as
possibly covered "within the single sum provided for Builders Risk
in the Schedule of Values."[6]   (Doc. #54-11, p. 3.)   Since the
Statement of Values before the Court is not properly authenticated,
and further does not include a Builders Risk sum, the Court will
deny summary judgment as to whether Berkshire Retail Shops is
covered under the RSUI Insurance Policy.

**F.   Whether the RSUI Insurance Policy is "Triggered"**

The RSUI Insurance Policy states that "[u]pon exhaustion of
the limit of the liability of the primary coverage, this policy
shall then be liable for the loss uncollected from the perils
and/or interest insured hereunder, subject to the limit of
liability and other terms and conditions specified herein." (Doc.
#1-5, p. 18.)   RSUI Indemnity argues that the values listed for the
properties for which Benderson Development seeks to recover and are
insured under the RSUI Insurance Policy total $10,688,440.00, which
does not reach the $13,000,000.00 level at which the RSUI Insurance
Policy is triggered for a wind damage claim.   Since the Statement
of Values before the Court is not authenticated, the Court cannot

---

[6]The Court assumes the "Schedule of Values" to be the same as
the "Statement of Values".

rely on the values presented by RSUI Indemnity and will deny summary judgment to both parties.

**G.  Notice requirement**

RSUI Indemnity asserts that the Benderson Development's claim is barred by its failure to comply with the applicable notice requirement.  (Doc. #37, p. 28.)  In the Commonwealth Insurance Policy, there is notice of loss provision which requires the insured to report in writing "as soon as practicable" every loss. (Id.)  RSUI Indemnity argues that Benderson Development did not provide notice to RSUI Indemnity until April 18, 2006, over twenty months after Hurricane Charley.  RSUI Indemnity argues it was prejudiced by the delay, and Benderson Development should not be entitled to recover as a matter of law.  In its Response, Benderson Development argues that since RSUI Indemnity did not properly raise the notice issue pursuant to Federal Rules of Civil Procedure 8(c) and 9(c), it cannot raise it as a basis for summary judgment. (Doc. #54, p. 17.)

RSUI Indemnity stated factually in the Complaint that it was not notified of Benderson Development's claim until April 10, 2006, "almost twenty months after the hurricane." (Doc. #1, ¶30.)  RSUI Indemnity did not, however, specifically assert improper notice or failure to comply with a condition precedent in its Complaint or its Answer and Affirmative Defenses to Counterclaim.  (See Docs. ## 1; 14.)  Pursuant to Rule 9(c) "when denying that a condition

precedent has occurred or been performed, a party must do so with particularity." Fed. R. Civ. P. 9(c). "The specific denial of performance of conditions precedent may be raised by motion as well as by answer." Associated Mech. Contractors, Inc. v. Martin K. Eby Constr. Co., 271 F.3d 1309, 1317 (11th Cir. 2001). Similarly, "[t]he purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it." Hassan v. USPS, 842 F.2d 260, 263 (11th Cir. 1988); see also, Proctor v. Fluor Enters., Inc., 494 F.3d 1337, 1350-52 (11th Cir. 2007)(holding that if the opposing party has notice of the defense prior to trial and has a meaningful opportunity to respond, and is not prejudiced, a Court may properly consider an affirmative defense notwithstanding the pleading requirements of Fed. R. Civ. P. 8(c)); Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1321 n.4 (11th Cir. 2006).

RSUI Indemnity argues that Benderson Development is barred from pursing its claim against RSUI Indemnity for a failure to comply with the notice requirement in its motion for summary judgment. The Court finds that RSUI Indemnity did not waive its rights under that contractual provision. However, the Court has no facts before it regarding improper notice, besides the timing of Benderson Development's claim. This is insufficient. Thus, the Court cannot determine as a matter of law whether Benderson

Development notified RSUI Indemnity "as soon as practicable" or that there was prejudice.

Accordingly, it is now

**ORDERED:**

1. Motion of Plaintiff RSUI Indemnity Company to Strike Affidavit of Guy E. Burnette, Jr., Esquire (Doc. #30) is **GRANTED.**

2. Motion of Plaintiff RSUI Indemnity Company to Strike Affidavits (Doc. #59) is **GRANTED.**

3. Motion of Plaintiff RSUI Indemnity Company to Stay Ruling On Or, in the Alternative, For Extension of Time to Respond to Benderson Development Company's Motion for Summary Judgment (Doc. #31) is **DENIED as moot.**

4. Defendant Benderson's Motion for Summary Judgment (Doc. #29) is **DENIED.**

5. Motion for Summary Judgment of Plaintiff RSUI Indemnity Company (Doc. #37) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this __5th__ day of January, 2011.

_John E. Steele_
**JOHN E. STEELE**
United States District Judge

Copies:
Counsel of record